521-0241-WC Lori Chapman, appellant by Thomas Crosby v. Illinois Workers' Compensation Comm'n Marion High School, appellee by Stephen Klesik. Mr. Crosby, you may proceed. Thank you, Your Honor. My name is Tom Crosby. I represent the appellant, Lori Chapman, for compensation benefits for an accident that occurred in October of 2008. This case was previously remanded to the commission for a specific finding of fact as to the post-accident wage. That finding has been made with the determination that Ms. Chapman is physically capable of performing only two-thirds duties as a part-time instructor at SIU. The issue in this case concerns a question of fact as the computation of the average wage for purposes of 8D1 is a question of fact. The court, upon remand prior to the findings of fact needed to determine the wage differential, told the commission to use as a divisor 52 weeks, both for the contractual wage that Ms. Chapman was earning prior to the accident at the time of arbitration, which was stipulated to be $68,633, earned over a period of 37 weeks. And the post-accident wage, which was earned over a period of 32 weeks, the commission computed a wage differential without reference to the mandate for computing compensation set out in section 10 of the act. As such, the record does not support the computation of a wage differential based on earnings, both pre-accident and post-accident, earned over a period of 52 weeks. Mr. Crosby, is there a law the case issue involved in this appeal? Justice Hudson, I do not believe so. In my reply brief, I did point out that the law of the case applies, just like race judicata, in situations where there's finality and where there's an interlocutory determination, as there was here. It is not applicable. I cited cases to that effect. But you acknowledge Marion High is specifically arguing that the claimant's arguments barred from arguing the issue under the law of the case doctrine. That is their position, correct? That is their position, and that's why I filed a reply that ferreted that out. And the case law cited does analogize the law of the case to that of race judicata, where you need some finality, particularly in situations where the facts have changed between the time that the court considers the case. And obviously, they have here, as you pointed out in our last oral argument, Justice Hudson, that the commission had failed to make a decision on the earning capacity of Ms. Chapman. So the case really wasn't before the court in a posture where the computation of the wage differential could have been decided, and that was the basis for the remand. So we're here after the remand. But the basis of the remand was also, we found there was some finality in the decision that we circuit court to only consider the commission to only consider a 52-week evaluation. We weren't giving them the option of going any other way. Is that correct? That was your direction, but I don't think that that changed in any way. I mean, I understand the law of the case would be that if that was the ruling, and that binds the commission, and it binds us as well to that ruling. I would respectfully disagree that it binds you, Your Honor. It certainly binds the commission by direction from the court. But at this stage, this court for the first time is a in a position where it has to examine the findings of the commission other than the 52-week denominator which was imposed upon them. But as to your question seemed to indicate that there was finality to that. And I can only refer you to the cases I cited in the reply that state that interlocutory actions don't have the same quality of finality that makes the law of the case doctrine impregnable. So I agree with you that the commission certainly had no choice. And that, of course, posits another problem with that type of direction. And if I may, I did point out in my brief that even though it was a Rule 23 order, the commission is also bound by the Workers' Compensation Act, which provides in 19E that conclusions of law as reported in the commission's findings become binding on the arbitrators. So if that is a conclusion of law that is final, then all the arbitrators and all the wage differential cases, despite the fact that it was noted as a Rule 23 order, by virtue of the fact that the commission has now been mandated to use that, it will be used in the future. So in terms of finality, it certainly constitutes a change in the law that we don't use average weekly wage to determine wage differentials. And as noted, the rationale for that, as stated by this court, was that nowhere in 8D1 could you find the words average weekly wage. But in 8D1, you do find a reference in terms of computation to 8B. And 8B, in the language of 8D1, it refers you to 8B. And 8B, of course, states that 8B2, the compensation rate in all and other serious and permanent disfigurement under paragraph C and other than for permanent partial disability under paragraph 2 of paragraph D or under paragraph C of this section shall be equal to 66 and one-third of the employee's average weekly wage computed in accordance with provisions of section 10. So 8D2 tells you to go to 8B to determine the percentage of computation. And 8B, which is specifically referenced in 8D1, says you use the average weekly wage. There's nothing in 8D1 that would lead us to believe that the edict and the preamble of section 10, where it specifically, the act says, in pertinent part there, the basis for computing the compensation provided for in section 7 and 8 of the act shall be as follows. The compensation shall be computed on the basis of the average weekly wage. Now, 8D1 is certainly in section 8. 8D1 references the use of average weekly wage by its express adoption of 8B2. Can I ask you a question? Sure. When we issued our prior decision in Marion High School, did we specifically order the commission to utilize a 52-week work year denominator to calculate the weekly installments? Yes. You didn't say work year. You said that the order was that they shall use 52 weeks as the denominator for both the pre-injury and post-injury portions of the equation. And they did exactly that, did they not? They did, but as your question points out, Justice Hoffman, there is nothing in the, it wasn't 52 weeks of employment because there was not 52 weeks of employment. And 8D1 is comparing a differential based on employment. Well, what you're essentially arguing is we were wrong when we remanded it and told them to use a 52-year work year, week work year, in their calculation. But you made that argument, I think, also in your petition for re-hearing, which we denied, didn't you? And I assume that you denied that because you were going to see this case again after remand. Actually, we deny it generally because we don't agree what's in the petition. I'm, of course, ignorant of the workings of the court, but I know that it was interlocutory at the time it was denied. I thought perhaps that had something to do with it. Well, when you say interlocutory, the commission was bound to follow the direction. They had to follow the direction. They had no choice. They had to follow the direction, correct, but at the time you gave them the direction. We were wrong. That's what your argument is. Well, I mean, it's not a big deal. Yes, I agree that I disagree with your conclusion and your construction of the statute, but what I was going to say is at the time you remanded it, as Justice Hudson pointed out, there weren't factual findings before you that would allow you even to compute it. So that I was trying to bootstrap into why I thought perhaps the motion to rehear was denied. Mr. Crosby, if I could just interject one other thing. I need to clarify for your benefit. I'm looking at this case of Kreutzer versus the Illinois Commerce Commission that says the law of the case doctrine, if it applies, provides that questions decided in a previous appeal are binding on the trial court on remand as well as the appellate court in a subsequent appeal. So you are, in essence, although you're packaging it differently, asking us to overrule ourselves. Well, the case applies to trial courts. It applies to us. Once we announce a decision that invokes the doctrine. Well, I know that cases can be appealed after there has been remand. Well, certainly they can, but the issue has been decided. The doctrine says you don't get to raise that issue again. I was relying on more of a Seventh Circuit case of Hunter versus Atchison that was prior remanded case. And they found that in terms of that doctrine, that if the facts had changed after the remand, which I believe they have here, in that case, there was a temporary injunction and it had been granted to maintain the status quo. And there was an interlocutory order that was appealed and that interlocutory character of that made it appealable because of the statute. And the court said, we think it requires a final judgment to stay in the application of the rule of the law of the case, just as it does for the case of Atchison versus Atchison. For the commission to calculate the wage differential in accordance with our direction, and you keep saying the facts change, what facts changed? Well, as you might recall, the issue was, did the commission say why it's comment that it was Ms. Chapman's personal choice to work two-thirds? Did that make the denominator, if it was just her personal choice and she had the ability to work more than that, was the commission saying it should be the full semester, 12 hours a semester, or was the fact that they use nine hours, two-thirds in their calculation, were they implicitly finding that besides it being her personal choice, it was the choice that was established by the evidence? Well, what difference would it make if Justice Hoffman alluded to, if we specifically direct the commission to do something, to apply the formula and we give them the formula, they don't have a choice. We've already agreed with that, correct? Can they just ignore our direction? That's correct, but Your Honor, the reason it was remanded was not for you to give them a direction, but for them to clarify their findings. Well, they were supposed to clarify whether her earning capacity was as an instructor, was for nine or 12 semester hours, and then compute it using a 52-week denominator. Correct. And you're saying now you want them to compute it using a 30-some-week denominator. No, I'm saying that once they have determined how much she made over 32 weeks and 37 weeks, that there is no basis in the evidence to use a 52-week. Well, what I think what Justice Hudson is saying, what Justice Barbera said is, once we decided it had to be 52 weeks, it's got to be 52 weeks for the commission, and it's got to be 52 weeks for us on appeal from the decision on remand. They were obligated to use 52 weeks. They had no choice. I'm not suggesting that they weren't, Your Honor. All right, so now the question becomes, what facts have changed that would allow us to revisit the question of 52 versus 32? Well, now you have in front of you findings of fact that tell you how much she made in a 37-week employment and a 32-week employment, and now you have in front of you those facts in terms of a finalized wage differential calculation. Now, am I asking you to look at and change your opinion as to the determination that—and I remember, Justice Hudson, during oral arguments, you kept saying, this is a windfall, this is a windfall, I can calculate it right here, this is a windfall. And you can tell in the actual what is earned over what period of time and the actual earning capacity whether it is a windfall now, whereas you couldn't before, because you didn't have the facts to even calculate the wage differential. Am I asking you to change your view of the law that 8D1 falls outside the scope of Section 10 because it does not specifically have the words average weekly wage in 8D1? Yes. I don't think you're bound. I don't think you're bound. Mr. Crosby, your time is up. You will have time in reply. Thank you, Your Honor. Thank you. Mr.—I'm always mispronouncing. Mr. Kleizek? Kleizek, Your Honor. Kleizek, thank you. You may respond. Thank you. My name is Steve Kleizek, and I represent the appellee in this appeal, Marion High School. I respectfully disagree with Mr. Crosby that your 2019 decision was not final. Mr. Crosby did file a petition for rehearing, which was denied. So I think that's as final as it can get in workers' compensation, despite the fact that it was remanded. And Mr. Crosby is saying that the facts changed. The facts didn't change. The facts remain the same. You remanded it back to the commission for a determination as to what the earning capacity is. Based on the fact, is it nine semester hours or 12 semester hours? But the underlying facts changed. So there's no change or additional facts that would make the rule of the—the law of the case or the rule of the case to be changed. So what happened was the commission, using the same facts that have been in this case since the record was established, they made a factual determination as to what the earning capacity was. Once they had the earning capacity figured out, the commission then followed your direction and used a 52-week denominator, which is the rule of the case. The calculator, right? They followed our direction, the calculator. Right, right. So I respectfully disagree with Mr. Crosby's argument. I think he's—I think he would like a second bite of the apple. I think he's telling you to change your opinion as to what the denominator should be when you're calculating the weekly installment amount for wage differential award, and I—and that's an improper—that's an improper thing to do. So, you know, I filed a motion to dismiss this appeal based on the law of the case, and I'm standing by it, and that's our position, is that, you know, this—this has already been decided, and Mr. Crosby can't get a second bite of the apple. Any questions from the court? I don't think so. Okay. Thank you, counsel. Thank you. You have time to reply, Mr. Crosby. Thank you. Thank you. If there weren't any facts that were asked of the commission, there would have been no remand. I've asked in the alternative that if the law, not just the law as applied to my client, but if the law in Illinois has changed and average weekly wage in Section 10 no longer applied to 81, I respectfully request that some members of this panel certify that question of importance, because even though, as I said, even though it was a Rule 23 order, because the commission was directed under Section 19E of the Act, it becomes binding on all the arbitrators in Illinois. Thank you. Thank you, Mr. Crosby. Thank you, counsel, both, for your arguments in this matter this afternoon. It will be taken under advisement, written disposition shall issue.